**PAN AMERICAN–GRACE AIRWAYS, Inc.
v. CIVIL AERONAUTICS BOARD et al.**

No. 9914.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 23, 1949.

Decided Sept. 12, 1949.

Mr. Gerhard A. Gesell, Washington, D. C., with whom Messrs. James H. McGlothlin and Charles F. Barber, Washington, D. C., were on the brief, for petitioner.

Mr. John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Washington, D. C., pro hoc vice, by special leave of Court, with whom Messrs. Herbert A. Bergson, Assistant Attorney General, Edward Dumbauld and William D. McFarlane, Special Assistants to the Attorney General, and Mr. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Washington, D. C., were on the brief, for respondent Civil Aeronautics Board.

Mr. Hubert A. Schneider, Washington, D. C., with whom Messrs. Roger J. Whiteford and Philip S. Peyser, Washington, D. C., were on the brief, for respondent Braniff Airways, Inc.

Mr. Henry J. Friendly, New York City, entered an appearance for respondent Pan American Airways, Inc.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and GEORGE C. SWEENEY, District Judge, sitting by designation.

WILBUR K. MILLER, Circuit Judge.

Pan American-Grace Airways, Inc., (Panagra) petitions for review of an order of the Civil Aeronautics Board.

Except for Pan American Airways, Inc., owner of one-half of its capital stock, Panagra had no American competition in air transportation south of the Canal Zone for a number of years. Panagra operated between the Canal Zone, numerous cities on the west coast of South America and Buenos Aires, Argentina. Pan American's routes extended from the United States through Central America and over the Caribbean Sea to the north coast of South America, to Montevideo and Buenos Aires. Pan American also furnished service from the United States to the Canal Zone, where it connected with Panagra.

Panagra and Pan American and thirteen others filed applications with the Civil Aeronautics Board for certificates of public convenience and necessity for extensive new routes into and in Central and South America, all of which were consolidatd into a single proceeding styled Latin American Air Service Case. Exhaustive hearings were conducted by the Board, after which briefs were filed with the trial examiner, his report was made to the Board and various exceptions were filed to the report with supporting briefs. A lengthy oral argument was heard by the Board itself. In all these proceedings Panagra and Pan American participated.

After its consideration of the case, the Board members were unable to agree on a

decision concerning the various proposals for additional South American service, so all applications failed for want of a majority vote. The case was then referred to the President of the United States, pursuant to § 801 of the Civil Aeronautics Act, 49 U.S.C.A. § 601, which provides not only that the issuance of a certificate of public convenience and necessity, but also its denial, revocation, amendment, or suspension, shall be subject to presidental approval. President Truman decided that additional service "as far south as Rio de Janeiro, Brazil, and Buenos Aires, Argentina," should be established "because of certain factors relating to our broad national welfare and other matters for which the Chief Executive has special responsibility."

Thereupon the Board gave further consideration to the matter and awarded to Braniff a certificate to operate from Houston, Texas, via Havana, the Canal Zone, and points on the west coast of South America, to Rio de Janeiro and Buenos Aires. This action was approved by the President on May 22, 1946, after which Panagra and Pan American had for the first time a potential competitor under American certification in operations south of the Canal Zone.

On September 30, 1947, Panagra filed with the Board a petition and complaint pursuant to §§ 401(h) and 1002(a) of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C.A. §§ 481(h), 642(a), in which it alleged that developments since Braniff's certification showed that its proposed operations[1] did not meet the public convenience and necessity requirements of the Act[2] and that Braniff intended to operate over routes other than those for which it

had been certified. The prayer of the petition and complaint was that the Board order an immediate hearing and thereafter, by appropriate order, direct one or more of the following:

"(a) That Braniff's South American certificate as described in Paragraph 2 above be altered, amended and modified by striking therefrom any authority to operate in any manner to any point or points south of Balboa, Canal Zone; or

"(b) That Braniff's South American certificate be suspended for a period of five years subject to further order of the Board; or

"(c) That the Board order hearings on all of Braniff's applications for exemption from the requirements of Title IV of the Act, for non-stop authority and for temporary suspension of services now or hereafter filed in connection with its proposed South American operations and consolidate such hearings with this proceeding or defer such hearings pending final order in this proceeding.

"(d) For such further and different relief as the Board shall consider appropriate in the premises."

On October 17, 1947, Pan American filed a petition to be allowed to intervene and requested the Board to broaden "the scope of this proceeding to include the portion of Braniff's route north of Balboa, Canal Zone, with the same requests for relief as to said portion as have been made by Panagra with reference to the portion of Braniff's route south of Balboa. * * *"

After receipt of these petitions, the Board defined the following issues and on April 29, 1948, heard oral argument for

---

1. Braniff had not then begun to operate under its certificate but it is now doing so.

2. In substance, petitioner's allegations of "new facts" are: (1) that economic conditions have so changed since the certificate was granted that an additional airline would be inadvisable, since an uncontemplated increased financial burden would fall upon both the government (through increased mail subsidy payments) and Braniff; (2) that foreign competition is now larger and keener than ever before; and (3) that the necessary bilateral agreements entered into by the President with the various foreign countries, and those currently pending, which are necessary before operations can begin, will require a substantial alteration in Braniff's certified routes, i. e., that, as a result of the executed and pending agreements, Braniff's proposed operations differ from its certified routes.

Panagra, Pan American and Braniff with respect to them:

"(a) whether it is in the public interest to order immediate hearing upon all or a part of the aforesaid petitions and complaints of Panagra and Pan American, and

"(b) whether the Board has legal power to and should at this time dismiss said petitions and complaints, or part thereof, without hearing."

On May 3, 1948, the Board entered an order dismissing the petitions and complaints, thus answering issue (a) in the negative and issue (b) in the affirmative. The order was accompanied by an explanatory opinion. It is this order of dismissal which Panagra asks us to review, arguing that it was improperly denied a hearing on the merits of its petition. Pan American has not sought review.

Subsection 401(h) of the Act is in part as follows: "The Authority [now Board] upon petition or complaint or upon its own initiative, after notice and hearing, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require * * *."

It is clear from this provision that the Board had the power, after notice and hearing, to grant Panagra's petition and to suspend Braniff's certificate, subject to the President's approval. The question is, did the Board have the power to deny the petition without a hearing on the merits and without the approval of the Chief Executive?

The essential problem before the Board was not that of deciding whether to withdraw or suspend Braniff's certificate. It was, rather, to say whether Panagra's petition stated facts sufficient to justify an inquiry to determine if public convenience and necessity required the withdrawal or suspension of Braniff's certificate,—an inquiry which necessarily would be a hearing preceded by notice. The Board's decision simply was that the petition did not warrant the inquiry, a ruling tantamount to a court's order sustaining a demurrer to a petition or complaint. Moreover, Panagra was permitted to present oral argument as to the sufficiency of its petition, which was more than it was entitled to under Federal Communications Commission v. W.J.R., 1949, 337 U.S. 265, 69 S.Ct. 1097. In that case, the Supreme Court held that an administrative agency, acting within a sound discretion, may dismiss a petition such as Panagra's without affording an oral argument as to its sufficiency, if the agency be of the opinion that its allegations fall short of showing a hearing on the merits to be necessary or warranted. Undoubtedly, therefore, the Board could deal as it did with the petition here unless it abused its discretion in so doing. We find nothing in the record to justify a holding that discretion was abused in this case.

The petitioner also argues that, under § 801 of the Act, the Board could not dismiss its petition without presidential approval. That section provides that the "issuance, denial, transfer, amendment, cancelation, suspension, or revocation of, and the terms, conditions, and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation * * * shall be subject to the approval of the President." But, in the order complained of by Panagra, there was no issuance of a certificate, no denial of a certificate, no transfer, no amendment, no cancelation, no suspension and no revocation. So, the order was not of the sort which the statute says must be stamped with the sanction of the President.

It is true that § 801 contains this provision: "* * * Copies of all applications in respect of such certificates and permits shall be transmitted to the President by the Authority [Board] before hearing thereon, and all decisions thereon by the Authority [Board] shall be submitted to the President before publication thereof."

This requirement has to do with applications concerning which hearings are necessary, and obviously is related to the earlier portion of the section which requires presidential approval of certain

enumerated Board actions. We think it is only with respect to those actions of the Board that copies of the applications must be submitted to the Chief Executive prior to the Board's hearing. It is not to be supposed that Congress intended to burden the President with the duty of ultimate decision on all questions which might come before the Board.

It seems to us that the Board acted correctly. Its order is

Affirmed.