**TRANS WORLD AIRLINES, Inc. v. CIVIL AERONAUTICS BOARD et al.**

**SPARKS et al. v. CIVIL AERONAUTICS BOARD.**

**Dockets Nos. 21727, 21728.**

United States Court of Appeals Second Circuit.

Petitions Filed July 21, 1950.

Decided Aug. 14, 1950.

Chadbourne, Wallace, Parke & Whiteside, New York City (Gerald B. Brophy and Charles Pickett, New York City, of counsel), for petitioner Trans World Airlines, Inc.

James M. Landis, Washington, D. C. (George J. Solomon, Washington, D. C., of counsel), for petitioners Sparks and others.

J. Howard McGrath, Atty. Gen., by H. G. Morison, Asst. Atty. Gen., Edward H. Hickey, Atty., Department of Justice, and Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Washington, D. C. (Richard E. Guggenheim, Atty., Department of Justice, and Warren L. Sharfman, Atty., Civil Aeronautics Board, Washington, D. C., of counsel), for respondent Civil Aeronautics Board.

Cleary, Gottlieb, Friendly & Cox, New York City (Henry J. Friendly, Elihu Schott, and Jerome E. Hyman, all of New York City, of counsel), for respondent Pan American World Airways, Inc.

Debevoise, Plimpton & McLean, New York City, and Covington, Burling, Rublee, O'Brian & Shorb, Washington, D. C. (Howard C. Westwood, Washington, D. C., Malcolm A. MacIntyre, New York City, Roswell B. Perkins, New York City, and Clifton J. Stratton, Jr., Washington, D. C., of counsel), for respondents American Airlines, Inc., and American Overseas Airlines, Inc.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Two petitions for judicial review of an order of the Civil Aeronautics Board have been filed in this court. In one Trans World Airlines, Inc., for brevity hereinafter referred to as TWA, is the petitioner; the respondents therein, in addition to the Board, are Pan American World Airways, Inc., American Overseas Airlines, Inc. and American Airlines, Inc., the latter being the principal stockholder of Overseas. In the other petition Brian O. Sparks and six other employees of Overseas are the petitioners and the Board only is named as respondent, but Pan American, Overseas and American have intervened therein pursuant to leave granted by this court. Jurisdiction in the court is claimed under § 1006 of the Civil Aeronautics Act, 49 U.S.C.A. § 646, and § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009.

The Board's order is brought before us at the present time by motions of the respective petitioners for an interlocutory stay of the order pending review of its validity on the merits. TWA's motion, in addition to a stay, asks also that the Board be directed to produce additional documents and evidence. There is also before us a motion by the intervenors in the Sparks petition to dismiss it on the grounds that the petitioners therein have not disclosed "a substantial interest" and that the court lacks jurisdiction. The respondents in the TWA petition have not formally moved to dismiss for lack of jurisdiction but have indicated that they will so move hereafter.

The order which is before us on these various motions was made by the Board in a consolidated proceeding entitled, In the Matter of the North Atlantic Route Transfer Case, Docket No. 3589 et al. It authorizes the transfer to Pan American of Overseas' temporary certificate of public convenience and necessity, and the acquisition by the former of the property, assets and business of the latter. It also amends the certificates of Pan American and TWA so as to authorize Pan American to serve Paris and Rome and TWA to serve London and Frankfurt. It retains jurisdiction in

the Board for the purpose of imposing such employee protective conditions as the Board may hereafter find appropriate and in the public interest, and it forbids Pan American and Overseas to discharge any of their employees, except for good cause, until further order of the Board.

Proceedings before the Board were initiated in December 1948 by applications by Pan American and Overseas for approval of an agreement between them for the sale and transfer to Pan American of all the assets of Overseas including the temporary certificate, expiring in 1952, which authorizes Overseas to engage in air transportation between points in the United States and various points in Europe. Pan American already possessed certificates of its own authorizing it to operate between the United States and Europe, including the major points which Overseas was authorized to serve. The third American-flag certificated trans-Atlantic air carrier is TWA. TWA intervened in the consolidated administrative proceeding and moved that it be broadened so that the issues should not be limited merely to action on the proposed sale but should "permit the establishment of the best possible system of American air transportation in Europe." In substantial conformity with this motion the Board included in the consolidated cause a proceeding instituted by it under 49 U.S.C.A. § 481(h) to determine whether, if the proposed purchase of Overseas should be approved, there should be any alteration, amendment or modification of the temporary certificates of public convenience and necessity issued to Overseas, Pan American and TWA in 1945.[1] Hearings extending over many months were held. On May 17, 1950 three of the Board's five members, although for differing reasons, decided that the applications for the acquisition by Pan American of Overseas' assets and the transfer of its certificate should be denied. On June 1st this decision and an order to "become effective on the date of its approval by the President of the United States" was submitted to the President. On June 29 the President

[1]. Northeast Air, et al., North Atlantic Routes, 6 C.A.B. 319.

signed this order and sent it to the Board, but the following day he "verbally directed" that the order be returned to him and thereafter wrote the Board a letter dated July 10th stating that he had decided to approve the sale with the route adjustments set forth in his letter.[2] In accordance with the President's direction the Board wrote a new opinion, approving the sale, and the order of July 10th. These were immediately submitted to the President who signed his approval of the order on July 11th. This order, the substance of which has already been set out, was published and served upon the parties on July 17, 1950.

The petitioners' motions for an interlocutory stay are based on section 1006(d) of the Civil Aeronautics Act, 49 U.S.C.A. § 646(d) and section 10(d) of the Administrative Procedure Act, 5 U.S.C.A. § 1009 (d). These sections authorize interlocutory relief "upon good cause shown" and "to the extent necessary to prevent irreparable injury." The motions might well be denied on the ground that the movants have not convinced us that a stay of the order is necessary to prevent their sustaining irreparable injury. TWA argues that if Pan American is allowed to go forward with the acquisition of the assets and business of Overseas, TWA's competitive position in overseas service will in the long run greatly deteriorate and that once the consolidation has been consummated it will be difficult, if not impossible, to "unscramble" it, if the order should ultimately be reversed on the merits. However, the immediate effect of eliminating Overseas as a competitor and granting to TWA the right to serve London and Frankfurt would seem likely to be beneficial to TWA, since there is no likelihood that Pan American can get all the European business formerly done by Overseas. On the other hand, the granting of a stay might prevent consummation of the sale and this would cause serious financial loss to both Pan American and Overseas who have already incurred large expenses preliminary to its consummation. Furthermore the public interest must be considered, and the President has stated in his letter of July 10th that it is "most important that this matter be disposed of in the present proceeding without further delay * * *." As to the motion by Sparks and his fellow employees, the case is even clearer. Their only pecuniary interest in staying the consolidation is to prevent loss of their jobs or impairment of seniority rights. The

2. The President's letter reads as follows:

"July 10, 1950

"My dear Mr. Ryan:

"I have considered the letters from you and the other Board members in response to my request of June 30, 1950, in the North Atlantic Route Transfer Case.

"My objective is to accomplish a route pattern in which our nation may have the benefit of competition to the principal traffic points in Europe, and to avoid a monopoly on the part of either of the United States carriers.

"It is apparent that, as traffic points, London, Paris, Rome, and for the time being Frankfurt are the leading European cities. Therefore I desire that both remaining carriers be authorized to serve each of these points. In the case of Rome, which one of the carriers now serves both on its Shannon and its Lisbon routes, the other carrier should be similarly authorized. As to Frankfurt which is a principal air traffic point during and principally because of the American occupation of Germany, the TWA is to serve Frankfurt until the Board shall find that such service is no longer required in the interests of the American occupation of Germany.

"This adjustment should result in the fullest accomplishment of the broad national objectives which, especially at this critical time, should govern the development of United States air transportation and will provide for vigorous competitive growth by our air lines.

"It is most important that this matter be disposed of in the present proceeding without further delay in order that the carriers concerned may immediately go forward with plans for their needed further development.

"Therefore, I have decided to approve the sale of American Overseas Airlines with the route adjustments set forth above. Please submit an order at once.

"Very sincerely yours,

"(Sgd.) Harry S. Truman

"Mr. Oswald Ryan
Acting Chairman
Civil Aeronautics Board
Washington 25, D. C."

Board's order protects them in these respects. But the most fundamental reason for denying interlocutory relief is lack of jurisdiction.[3]

■ The critical statute is Section 801 of the Civil Aeronautics Act, 49 U.S.C.A. § 601, the material portions of which are set out in the margin.[4] An order of the Board which is subject to Presidential approval under that section is immune from judicial review, despite the broad language of section 1006, 49 U.S.C.A. § 646. Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568; Pan American Airways Co. v. Civil Aeronautics Board, 2 Cir., 121 F.2d 810. As Mr. Justice Jackson explained in the Waterman case, when a carrier seeks to engage in overseas or foreign air transportation "Congress has completely inverted the usual administrative process." The President's "control of the ultimate decision [is not] a mere right of veto." It "is not limited to a negative but is a positive and detailed control over the Board's decisions, unparalleled in the history of American administrative bodies." "The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports neither are nor ought to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret."[5] Hence it is clear that had the order of July 10th been the only order adopted by the Board and approved by the President the court would have no power to review it.

The petitioners contend that the only valid order of the Board was the one submitted to the President on June 1st and that it is reviewable because it did not require Presidential approval or, if it did, it became "finalized" and effective when he signed it on June 29th; hence everything which occurred thereafter was without legal effect.

■ The first branch of the argument—that the order of June 1st did not require Presidential approval—rests on a meticulously literal reading of the first sentence of section 801, which subjects to Presidential approval the issuance and denial of certificates, as well as their transfer, amendment, cancellation, suspension, or revocation, and the terms, conditions and limitations contained in them. This list, they point out, does not include the *denial* of a transfer of a certificate. If the denial of a transfer is not subject to Presidential approval, the same must be true of the denial of an amendment, cancellation, suspension, or revocation of a certificate. So restricted a view of legislative intent is negated by the broad sweep of the doctrine laid down in the Waterman case, supra. Nor does it seem reasonable as an original proposition. The same delicate issues of foreign policy which make it desirable for the President to review a decision granting

3. Cf. Gable v. Vonnegut Machinery Co., 6 Cir., 274 F. 66, 74.

4. "§ 601.   The President of the United States
   The issuance, denial, transfer, amendment, cancelation, suspension, or revocation of, and the terms, conditions, and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation, or air transportation between places in the same Territory or possession, or any permit issuable to any foreign air carrier under section 482, shall be subject to the approval of the President. Copies of all applications in respect of such certificates and permits shall be transmitted to the President by the Civil Aeronautics Board before hearing thereon, and all decisions thereon by the Civil Aeronautics Board shall be submitted to the President before publication thereof. * * * "

5. The quotations are from 333 U.S. at pages 109–111, 68 S.Ct. at page 435. See also Judge Hand's statement that in granting certificates of public convenience and necessity the Board acts merely as "the President's adviser. His necessary approval or disapproval makes him, and not the Board, the ultimate arbiter." Pan American Airways Co. v. Civil Aeronautics Board, 2 Cir., 121 F.2d 810, 814.

amendment of a certificate may be present in a decision to deny amendment. It would be in the highest degree formalistic for a court to say that the President may review one and not the other. Furthermore such a reading of the first sentence seems inconsistent with the second sentence requiring that copies of all applications "in respect of such certificates and permits" be transmitted to the President before hearing thereon, and "decisions thereon" be submitted to him before publication thereof. This would seem purposeless unless he had power to approve or disapprove the Board's decision. But however this may be when the proceeding before the Board is confined to granting or denial of the transfer of a certificate, where, as in the present proceeding, the issues had been broadened so as to permit the Board to determine whether, if the transfer of Overseas' certificate was permitted, the certificates of Pan American and TWA should be extended to new countries not previously served by them, we cannot doubt that an order denying such extension was as subject to Presidential approval as would have been an order denying a certificate for such service.

■ The petitioners further argue that the order of June 1st had two aspects— denial of transfer of certificate and denial of approval for acquisition of physical assets. It may be that Board action on an acquisition of assets under section 408, 49 U.S.C.A. § 488, not involving the transfer of a certificate, is judicially reviewable under section 1006(a), 49 U.S.C.A. § 646 (a). But where, as in the present case, the acquisition of assets and the transfer or amendment of a certificate are inextricably mingled in the same proceeding, we think that the Congressional purpose to grant the President discretion as to overseas air transportation would be thwarted to permit judicial review of that portion of the order relating to acquisition of assets. No authority to the contrary has been brought to our attention. The case of Pan American-Grace Airways, Inc. v. Civil Aeronautics Board, 85 U.S.App.D.C. 297, 178 F.2d 34, is plainly distinguishable.

■ The second branch of petitioners' argument is that having once approved the order and returned it to the Board, the President was powerless to retract his approval and direct the Board to submit a different decision and order. This they say is true even though the first order had not yet been published or notice thereof given to any of the parties to the administrative proceeding. They rely on cases such as Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, and those involving executive approval of legislative bills. Seven Hickory v. Ellery, 103 U.S. 423, 26 L.Ed. 435; People ex rel. Partello v. McCullough, 210 Ill. 488, 71 N.E. 602; State v. Whisner, 35 Kan. 271, 10 P. 852. These cases are not persuasive. A closer analogy may be found in the control which courts retain over their own judgments. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354; Zimmern v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118. We have pointed out that as to orders which require his approval or disapproval the President is the final arbiter and the Board merely his adviser. We see no good reason why delivery of an order to the President's "adviser" should put beyond his control prompt reconsideration of it while the order still remains unpublished and unknown to the parties and no one can have acted in reliance upon it. Cf. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 S.Ct. 876. The situation is analogous to that where a judge renders a decision which he hands to the clerk of the court and then recalls for modification or reversal before the clerk has entered the judgment or notified the parties.

For the foregoing reasons we think that the President and the Board acted within their legal powers in making the order of July 10th. If so, the court is without jurisdiction to review that order and the petitions for review will have to be dismissed when brought on for hearing. The issue has been thoroughly and capably argued on these motions. Nothing will be gained by postponing decision until final hearing. And an immediate decision on this issue may accelerate the parties' access to the Su-

72

preme Court, if they are disposed to seek it. Accordingly, the motions for a stay and other interlocutory relief are denied and the petitions for review are dismissed for lack of jurisdiction.