**NEBRASKA DEPARTMENT OF AERO-NAUTICS et al., Petitioners,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

**Frontier Airlines, Inc., Intervenor.**

**Nos. 16589, 16590.**

United States Court of Appeals
Eighth Circuit.

Jan. 4, 1962.

William C. Burt, Washington, D. C., Robert M. Beckman, Koteen & Burt, Washington, D. C., Clarence A. Davis, Washington, D. C., and Rush C. Clarke, North Platte, Neb., on the brief, for petitioners.

O. D. Ozment, Associate General Counsel, Litigation and Research, Civil Aeronautics Board, Washington, D. C., Franklin M. Stone, General Counsel, Civil Aeronautics Board, Washington, D. C., Robert A. Bicks, Asst. Atty. Gen., Washington, D. C., John H. Wanner, Deputy General Counsel, Washington, D. C., Richard A. Solomon and Henry Geller, Attorneys, Dept. of Justice, Washington, D. C., on the brief, for respondent.

Herbert Elish, Washington, D. C., Raymond J. Rasenberg, Bowen & Rasenberger, Washington, D. C., William A. Nelson, Frontier Airlines, Inc., Stapleton Airfield, Denver, Colo., Marti, O'Gara, Dalton & Sheldon, Lincoln, Neb., on the brief, for intervenor, Frontier Airlines, Inc.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BLACKMUN, Circuit Judge.

The petitioners,[1] which we shall collectively call "Nebraska", seek review here [2]

---

1. The Nebraska Department of Aeronautics; the State of Nebraska; the City, Chamber of Commerce and Airport Authority of Omaha; the City and Airport Authority of Lincoln; the Airport Authority of Columbus; the Cities and Chambers of Commerce of Norfolk, Ainsworth and Valentine; and the City of Chadron.

2. Pursuant to the provisions of § 1006 (a) and (b) of the Federal Aviation Act of 1958, as amended, 72 Stat. 795, 49 U.S. C.A. § 1486(a) and (b).

of two orders of the Civil Aeronautics Board. In their brief they state:

"This case involves the power of the Civil Aeronautics Board * * * to authorize without a hearing, on the basis of unverified pleadings, the cessation of all air service on segment 13 of route 73 which Frontier Airlines, Inc. * * * was given the sole certificate responsibility to serve."

The segment referred to is the northern Nebraska route between Omaha, Nebraska, and Casper, Wyoming, via the intermediate points of Lincoln, Columbus, Norfolk, Ainsworth, Valentine, and Chadron, Nebraska, and Lusk and Douglas, Wyoming.

The first order,[3] issued without a hearing, authorized Frontier temporarily to suspend service over segment 13.[4] At the same time and by the same order, the Board, on its own initiative,[5] instituted an investigation to determine whether the public convenience and necessity required the deletion of segment 13 from Frontier's certificate. The authorization for temporary suspension ran "until ninety days after final decision" in the investigation so ordered by the Board.[6] Our No. 16,589 is the appeal from this order.

The second order[7] dismissed, also without a hearing, Nebraska's cross-petition for an investigation into the adequacy of Frontier's total service in Nebraska and the substitution of another carrier for Frontier in that state. Our No. 16,590 is the appeal from this order.

The controversy has its origin in the Seven States Area Investigation, CAB Docket 7454, et al., the final decision in which was issued December 8, 1958. Frontier, by Board order[8] and contrary to the recommendation of its hearing examiner, was then granted authority, inter alia, to provide exclusive subsidized service on segment 13.[9] Although the examiner had concluded that the segment should not be authorized because the subsidization costs would be out of line with the service involved and would be primarily for the cities of Ainsworth and Valentine, the Board awarded the route in view of the isolation of the area and the discontinuance of passenger rail service. The award, however, was for an "experimental period" of 5 years and was subject to an announced "use it or lose it" policy.[10]

This policy, as embraced in Seven States, was to the effect that the Board was willing, on an experimental basis, to

3. No. E-15636, issued August 9, 1960.

4. Service at Columbus, because of inadequate airport facilities, had never been instituted; temporary suspension of service there was formally authorized by Order No. E-13984 issued June 4, 1959. Service at Douglas and Lusk, Wyoming, had been suspended October 15, 1959, for economic reasons. Order No. E-14502, issued September 30, 1959.

In spite of the authorization, Frontier has continued to serve the remainder of the segment. This, so far as the Nebraska points are concerned, has evidently been in obedience to a state court injunction obtained by the Nebraska Department of Aeronautics.

5. Pursuant to § 401(g) of the Act, 49 U.S.C.A. § 1371.

6. The Board's investigation proceeding has now resulted in the issuance on October 19, 1961, of its Order No. E-17613, amending Frontier's certificate by the deletion of segment 13; the amended certificate and the deletion, however, "shall be effective on December 19, 1961", subject to prior possible extensions thereof by the Board itself or by the filing of a petition or petitions for reconsideration.

7. No. E-15637, also issued August 9, 1960.

8. No. E-13254.

9. The Board, pursuant to its authority so to do under § 416(b) of the Act, 49 U.S. C.A. § 1386(b), by Exemption Order No. E-12796, issued in July 1958, had already authorized Frontier to serve segment 13. Frontier inaugurated service there October 1, 1958.

10. The Board at that time forecast an annual subsidy of $316,561. This was computed upon the assumption of a 40% load factor and a minimum pattern of one round trip daily between Casper and Omaha and another between Chadron and Omaha.

offer local air service to smaller communities with unknown or marginal traffic potential "a chance to demonstrate whether they will use and can afford local air service". Three factors were specified: (1) unless a city enplaned an average of 5 passengers daily for the 12 months following the initial 6 months of service, the Board, in the absence of unusual circumstances, itself would institute a formal investigation to determine whether the city should lose its air service; (2) unless a route segment averaged a stated passenger minimum during the same period, a similar step would be taken; and (3) the obligation of management to come forward promptly with suggested route modifications, and

"In particular, where a community or segment fails to make adequate use of a subsidized service, the carrier is free to seek a voluntary suspension of service even in advance of a proceeding to terminate the certification. Indeed if a carrier fails to exercise adequate vigilance in this regard, it may reflect upon the economy and efficiency of management in subsidy mail pay proceedings under section 406 of the Act.[11]"

On February 8, 1960, after 16 months of service, Frontier filed with the Board its application for temporary suspension of service on segment 13 "until such time —not less than a year hence, that the traffic warrants the resumption of such service". Detailed exhibits accompanied the application. Amendments were filed with further data so that the Board had before it Frontier's stated results of operations on the segment for more than 18 months. In general, this material contained the history of the operation in terms of schedules provided, traffic results by cities and over the entire segment, and alternate available air facilities. The primary conclusory allegations submitted by Frontier were that the traffic failed to meet the "use it or lose it" standard; that a subsidy of $239,213 annually (estimated on the basis of one round trip daily) was excessive in the light of the actual utilization of the service; that it would be neither economical nor efficient management for Frontier to continue the service; and that alternate air service for nearly half the present traffic was adequate.

Nebraska combined its answer with the cross-petition referred to above. These, too, were accompanied by supporting material in the form of affidavits, newspaper editorials and the like. In general, Nebraska took the position that Frontier's service throughout the state was unrealistic in operation and grossly inadequate; that this was the major factor in the lack of traffic response; that there was no prospect for improvement under Frontier's management; that the test period had not been an adequate one; that the stated subsidy was greatly overestimated; that suspension of service would not be temporary but would actually amount to abandonment; that a hearing was required as a matter of law; and that Frontier should be replaced.

Frontier then moved for a decision on the pleadings.

The Board did not hold a hearing on either application. With respect to the proceeding instituted by Frontier the Board found that the standards prescribed in Seven States "have not been met by most of the cities on segment 13 or by the segment as a whole"; that "despite any resultant isolation of the cities in northern Nebraska the traffic response does not indicate a strong need for air service"; that suspension would deprive only Ainsworth and Valentine of all air service; that these cities originated insufficient passengers to warrant service; that the subsidy required to support these two cities and the entire

---

11. Section 406 is 49 U.S.C.A. § 1376. Among the rate-making elements specified by § 406(b) is the need of the particular carrier for compensation sufficient to insure mail service performance and, together with all other revenue, to enable the carrier "under honest, economical, and efficient management" to maintain and continue the proper development of air transportation.

segment was "excessive in relation to the use made of the service"; that "on balance, continuance of the operation would not be in the best interests of the public"; and that the operation would involve a subsidy cost far outweighing the inconvenience to the areas affected.

With respect to the proceeding instituted by Nebraska's petition the Board found that Frontier had demonstrated that it had provided "a reasonable quantity of service and that the quality of that service * * * has also been reasonable when viewed in the light of the traffic response"; that there is "no doubt that there have been deficiencies in that service"; that "We are satisfied that Frontier is aware of the deficiencies that have existed and that it is striving to eliminate the flaws in its services"; that Frontier's performance was not such as to constitute inadequate service within the meaning of § 404 of the Act, 49 U.S.C.A. § 1374; and that "existing circumstances" did not "warrant setting the matter for hearing".

Although both appeals emerge from the same factual foundation, each presents a different question of statutory interpretation and application. We therefore consider them separately.

### No. 16,589

In this appeal from the order authorizing the temporary suspension of service the question of mootness, though not specifically suggested by counsel, presents itself. Because 90 days have not yet elapsed from the issuance of the final decision on October 19, 1961 (footnote 6), or from the effective date of the amended certificate issued pursuant thereto (which can be extended in the interim by the Board itself or by the filing of any petition for reconsideration), we necessarily conclude that this appeal is not yet moot.

Involved here are subsections (j) and (g) of § 401 of the Act, 49 U.S.C.A. § 1371(j) and (g). The filing of Frontier's petition and the Board's action thereon were purportedly pursuant to § 401(j) which reads:

"No air carrier shall abandon any route, or part thereof, for which a certificate has been issued by the Board, unless, upon the application of such air carrier, after notice and hearing, the Board shall find such abandonment to be in the public interest. Any interested person may file with the Board a protest or memorandum of opposition to or in support of any such abandonment. The Board may, by regulations or otherwise, authorize such temporary suspension of service as may be in the public interest".

and to § 205.5 of the Board's Economic Regulations, 14 C.F.R. 205, first promulgated July 1, 1949, which reads in part:

"The Board will grant such application if it finds that such temporary suspension of service is in the public interest. * * *"

but prescribes nothing specific by way of notice and hearing.

Section 401(g) reads in part:

"The Board upon petition or complaint or upon its own initiative, after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require * * *."

Three questions arise:

(a) May the Board authorize temporary suspension of air service under § 401(j) without a prior hearing?

(b) If so, was the evidence here sufficient to support the Board's findings and its order authorizing the temporary suspension?

(c) Did the temporary suspension authorized by the Board equate with abandonment of service and thus was it subject to the hearing requirement of § 401(j)?

1. *The necessity of a hearing.* One has no difficulty with § 401(j) standing alone. It obviously applies to a proceeding initiated by an air carrier itself. Its first sentence clearly requires notice and

hearing upon a carrier's application for abandonment of a certificated segment. Just as clearly, its last sentence authorizes temporary suspension of service "by regulations or otherwise". The basic difference between abandonment which implies permanency, on the one hand, and temporary suspension which smacks of interlocutory relief, on the other, so long as each is "in the public interest", seems to justify whatever difference in procedure and treatment the first and the last sentences of § 401(j) may respectively provide. And the presence of a requirement for hearing with respect to abandonment and the absence of a requirement for hearing with respect to temporary suspension would indicate that a hearing is not required when the Board considers a suspension application under § 401(j).

Nebraska first argues, however, that the scheme of the Act cannot be derived from § 401(j) alone but that it must be read in connection with § 401(g) and the entire statute. § 401(g) also refers to suspension and Nebraska urges that, taking the two sections together, at least some proceedings for suspension of service must be regarded as initially governed by § 401(g) which by its terms requires notice and hearing prior to Board action. Nebraska then would relegate the last sentence of § 401(j) to emergency situations which require immediate action and only then to air safety emergencies as distinguished from questions of economic feasibility of operation.[12]

■ We feel that the two sections are not interdependent and that § 401(j) stands apart from § 401(g). The last sentence of § 401(j) is directed to temporary suspension of *service* whereas § 401(g) is directed to suspension of any *certificate*. The latter, as does the first sen-

tence of § 401(j), relating to abandonment and when coupled with a proceeding under § 401(f), involves a change in the carrier's basic route authority which is required of all air carriers by § 401(a) of the Act. 49 U.S.C.A. § 1371(a). § 401(j)'s last sentence, of course, probably can conveniently be utilized to relieve an emergency situation. It seems apparent, however, that its main purpose is to provide temporary relief, where deemed proper by the Board, because of delays inherent in a full-scale hearing. Such relief could well be accompanied and implemented by a proceeding by the carrier under the first sentence of § 401(j) and § 401(f), or one by a carrier or the Board itself, as in its initiated proceeding here, under § 401(g), in both of which a change in certification is involved. In these situations the hearing requirement by the very terms of the statute is an absolute one. Delta Air Lines, Inc. v. Civil Aeronautics Board, 2 Cir., 1960, 280 F.2d 43, 48, affirmed, 1961, 367 U.S. 316, 321, 81 S.Ct. 1611, 6 L.Ed.2d 869.

Nebraska's reference to and reliance upon the emergency rule finds its answer in the fact that there is nothing in the language of the statute which justifies limiting the last sentence of § 401(j) to air safety emergencies. The statutory test instead is the evident one that the step taken "be in the public interest". This in turn is defined by § 102, 49 U.S.C.A. § 1302, to include economic considerations. Furthermore, air safety emergencies have a specific place in Title VI of the statutory scheme and, in particular, in § 609, 49 U.S.C.A. § 1429, which gives the Administrator, as distinguished from the Board, power to amend, modify, suspend, or revoke certain types of certificates without a hearing whenever he determines the existence of an air safety

12. The theory here is that this interpretation of the Act makes it consistent with the judicially approved "emergency" doctrine pursuant to which an agency is allowed to act without hearing to meet an emergency notwithstanding the fact that in the absence of an emergency a hearing might be required. Cited in support

of this are North American Cold Storage Co. v. Chicago, 1908, 211 U.S. 306, 315, 29 S.Ct. 101, 53 L.Ed. 195; Adams v. City of Milwaukee, 1913, 228 U.S. 572, 584, 33 S.Ct. 610, 57 L.Ed. 971; City of New York v. New York Water Service Corp., 1937, 274 N.Y. 100, 8 N.E.2d 294, 296.

emergency and in § 1005(a), 49 U.S.C.A. § 1485(a) which empowers the Administrator, when he determines that an air safety emergency exists, to make orders, rules and regulations without hearing or other preliminary procedures.

Nebraska next suggests that it is the "consistent policy" of the Act, as well as that of other federal regulatory legislation, to grant hearings for the resolution of matters which are "complex and controversial and seriously affect substantive rights". In support of this proposition Nebraska directs attention to several sections of the Act which require a hearing prior to administrative action.[13] The very repetition, however, of the requirement of notice and hearing in several sections may indicate that when the Congress intended to impose a hearing requirement it knew how to provide for one. Furthermore, there are other sections of the Act, some of which may be characterized as involving "complex and controversial" situations, which do not by their terms specify that a hearing be held.[14] We have found no authority supporting this proposition advanced by Nebraska. While we recognize that the routine of notice and hearing is a common method of disposing of complex and controversial matters and has been said to be based on procedural due process where property rights are involved,[15] we are not prepared to hold that that pattern is obligatory where, as here, the applicable statute authorizes Board

action "by regulations or otherwise" and there is no due process question with respect to the applicant's property rights. Compare Eastern Airlines v. Civil Aeronautics Board, 1950, 87 U.S.App.D.C. 331, 185 F.2d 426, 428, vacated with directions to dismiss as moot, 341 U.S. 901, 71 S.Ct. 613, 95 L.Ed. 1341 and American Airlines v. Civil Aeronautics Board, 1956, 97 U.S.App.D.C. 324, 231 F.2d 483, 487–8.[16]

A review of the legislative history of the Act and of its predecessor, the Civil Aeronautics Act of 1938, 52 Stat. 977, as amended, with particular emphasis upon the 1938 Act's §§ 401(k) and 401(h), former 49 U.S.C.A. § 481(k) and (h), substantially identical with § 401(j) and § 401(g) of the present Act, leads us to no contrary conclusion but, instead, reinforces our observations above.[17]

■ The Board and Frontier urge, and we mention for what it is worth, the Board's own long standing and consistent view that the statute permits temporary suspension without hearing where traffic does not justify service. Numerous instances where the Board has acted in exactly that situation over the period from 1940 to 1960 are cited to us and do not require detailed listing here. We mention, as examples only, Board Orders No. E–12062 (1957), American at Lynchburg and Bristol, Virginia; No. E–12712 (1958), TWA at Topeka, Kansas; and No. E–13994 (1959), Frontier at Jackson, Wyoming. Admittedly, most, but

13. §§ 401(c), 401(g), 401(j) (first sentence), 402(f), 406(a), 408(b), and 411, which are, respectively, 49 U.S.C.A. §§ 1371(c), 1371(g), 1371(j), 1372(f), 1376(a), 1378(b) and 1381.

14. §§ 401(h), 402(g), 407, 409, 410, 412, 416, and 1002(g), which are, respectively, 49 U.S.C.A. §§ 1371(h), 1372(g), 1377, 1379, 1380, 1382, 1386, and 1482(g).

15. Philadelphia Co. v. Securities and Exchange Com'n, 1948, 84 U.S.App.D.C. 73, 175 F.2d 808, 817, vacated with directions to dismiss as moot, 337 U.S. 901; United States v. McCrillis, 1 Cir., 1952, 200 F.2d 884, 888; Standard Airlines Inc. v. Civil Aeronautics Board, 1949, 85 U.S.App. D.C. 29, 177 F.2d 18, 21.

16. The pattern does have pertinency for abandonment or for certificate changes but there, as has been noted with respect to §§ 401(j) and (g), notice and hearing are required by the very terms of the statute.

17. See Hearings Before the House Committee on Interstate and Foreign Commerce on H.R. 5234 and H.R. 4652, 75th Cong., First Session (1937) at p. 346; House Report 2254, 75th Cong., Third Session (1938) at p. 7; Hearings Before Subcommittee of Senate Interstate Commerce Committee on S. 3659, 75th Cong., Third Session (1938) at p. 4; 83 Congressional Record 6752 (May 12, 1938) containing the debates on S. 3845, 75th Cong., Third Session.

not all, of the instances cited embraced no opposition. Yet we all know that administrative construction of an Act is entitled to weight and, even, to "great weight". United States v. American Trucking Assn's, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed.2d 1345; American Airlines v. Civil Aeronautics Board, 7 Cir., 1949, 178 F.2d 903, 908; Review Committee, Venue VII, etc. v. Willey, 8 Cir., 1960, 275 F.2d 264, 272, cert. den. 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522; United States v. Ekberg, 8 Cir., 1961, 291 F.2d 913, 921, cert. den. 368 U.S. 920, 82 S.Ct. 242.

Finally, since the issuance of the Board's orders in this case, the Court of Appeals for the District of Columbia has expressly held that a hearing need not precede a temporary suspension order issued pursuant to the last sentence of § 401(j). Springfield Airport Authority v. Civil Aeronautics Board, 1960, 109 U.S.App.D.C. 197, 285 F.2d 277, 279. Although Nebraska attempts to distinguish this case on the ground that it was confined to consideration of the differences between suspension and abandonment under § 401(j) alone and did not concern the relation of suspension under § 401(j) and suspension under 401(g), we regard the case as pertinent authority on this issue.

■ In summary, therefore, we conclude that a hearing is not a prerequisite to the granting of an application for temporary suspension of service pursuant to the provisions of the last sentence of § 401(j).

■ 2. *The sufficiency of the evidence.* The controlling statute, § 1006 (e), 49 U.S.C.A. § 1486(e), provides:

"The findings of facts by the Board or Administrator, if supported by substantial evidence, shall be conclusive. * * * "

This language has been interpreted judicially to mean what it says, that is, that the reviewing court must treat the administrative findings as conclusive if they are supported by substantial evidence. North American Airlines v. Civil Aeronautics Board, D.C.Cir., 1956, 100 U.S.App.D.C. 5, 240 F.2d 867, 871, cert. den. 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760; Kuhn v. Civil Aeronautics Board, 1950, 87 U.S.App.D.C. 130, 183 F.2d 839, 843.

Nebraska, however, argues generally that the temporary suspension and the institution of a deletion proceeding here represent a substantial departure from the Board's position in Seven States and thus require a "complete and convincing" explanation; that because there was no hearing there could be no adequate record on which findings could be justifiably based; and that even if there is a record which is quantitatively sufficient it is unreliable because the pleadings and supporting material are unsworn. Nebraska further attacks the particular findings that Frontier's service had been commensurate with existing traffic, that the segment's service value and benefit were out of proportion to the subsidy cost, that no intermediate point on the segment enplaned the required average of 5 passengers a day, and that there was, to a large degree at least, alternate available and usable air service.

■ The general attack is answered, we think, (a) by the observation that the suspension order is not contrary to the conclusions reached in Seven States but is a specific application of the "use it or lose it" policy articulated therein; (b) by the conclusion that the Board's resting its findings on the material offered in support of the respective pleadings is not improper in this kind of proceeding, Springfield Airport Authority v. Civil Aeronautics Board, supra, 109 U.S.App. D.C. 197, 285 F.2d 277 (where the same procedure was tacitly approved); see also Eastern Airlines v. Civil Aeronautics Board, supra, 87 U.S.App.D.C. 331, 185 F.2d 426, 428, and American Airlines v. Civil Aeronautics Board, supra, 97 U.S.App.D.C. 324, 231 F.2d 483, 487, footnote 4; (c) by the fact the unsworn character of the pleadings was not raised before the Board and is thus foreclosed by § 1006(e), 49 U.S.C.A. § 1486(e); and (d) by the fact that Rule 302.4(b)

of the Board's own procedural regulations, 14 C.F.R. 302.4(b), modeled after Rule 11, F.R.Civ.P., 28 U.S.C.A., specifically authorizes the use of pleadings which are merely signed. The particular attacks find their answer in the fact that it is apparent from the Board's order that it was fully aware of Nebraska's allegations and the practical results of service suspension. That the Board generally accepted the supporting material of Frontier in preference to that of Nebraska is not nefarious in result. An examination of the Board's order reveals to us that it considered all the evidence tendered by both sides, decided that Frontier's service was neither near-white, as Frontier suggested, nor all-black, as Nebraska proposed, and made an order which it considered best in view of all factors present at that time.

█ We have carefully reviewed the complete file of the proceedings before the Board and we are fully satisfied that the material accompanying the pleadings constitutes evidence sufficiently substantial to support the Board's findings here. Furthermore, to the extent Nebraska objects to the form and detail of the findings, we conclude that they were made with sufficient elaborateness to enable this court to relate the evidence to them and that they are therefore satisfactory as to form. Lake Central Airlines v. Civil Aeronautics Board, D.C. Cir., 1956, 239 F.2d 46, 49; Capitol Airways, Inc. v. Civil Aeronautics Board, D.C.Cir., 1961, 292 F.2d 755, 758.

Finally, we have read with care the Board's opinions and orders No. E-16123 and No. E-16455 issued December 7, 1960, and March 1, 1961, respectively, in Mohawk Temporary Intermediate Points Renewal Proceeding, C.A.B. Docket 10161, urged upon us by Nebraska. While some of the factors which Nebraska stresses in the present proceeding were given weight by the Board in Mohawk, we feel that the Keene, New Hampshire, situation there involved is readily distinguishable from the northern Nebraska situation presently before us, especially so far as the amount and

reasonableness of government subsidy is concerned, and that that proceeding does not demonstrate basic inconsistency in Board attitude between that situation and the present one. We observe in particular that in the second of the Mohawk orders the Board stated, "With regard to the existence of unusual or compelling circumstances, it is important to note that it is the aggregate effect of special circumstances and not each one in isolation that is appraised * * *."

█ 3. *The permanent character of the temporary suspension.* Nebraska argues that the particular label chosen by the Board is not conclusive and that actual abandonment is involved here because Frontier was seeking eventual deletion of segment 13 from its certificate. This issue was expressly met in Springfield Airport Authority v. Civil Aeronautics Board, supra, 109 U.S.App.D.C. 197, 285 F.2d 277, where Judge Fahy said, pp. 279–280:

"We note petitioners' contention that the Board has gone beyond what it purports to do and has permitted an actual abandonment of service rather than a temporary suspension. Petitioners [argue] * * * that a later hearing on the application for amendment of the certificate will not be a fair hearing because a situation will have arisen, due to the so-called temporary suspension, which will prevent restoration of the previous position even if the amendment is later shown not to be justified * * * and, moreover, that the order makes a number of positive findings of fact which it will not be possible for the Board as a practical matter to disregard. These intangibles do exist but we are not justified because of them in making the choice petitioners insist upon, namely, to hold that the hearing required before the changes become permanent will be futile unless a hearing is held on the temporary changes. We must assume that the Board, subject to judicial review, will decide as it should when, after a hearing, it comes to the tak-

ing of permanent action; that is to say, we may not now assume an erroneous final decision because of this temporary decision. Peoples Broadcasting Co. v. United States, 93 U.S.App.D.C. 78, 209 F.2d 286. While we are not unaware as a practical matter of the possible disadvantage to parties incident to tentative interim decisions of public administrators, we cannot remake the statutory procedure because of this."

See also United Air Lines v. Civil Aeronautics Board, 7 Cir., 1952, 198 F.2d 100, 106, 108, and Western Air Lines v. Civil Aeronautics Board, 9 Cir., 1952, 196 F.2d 933, 936, cert. den. 344 U.S. 875, 73 S.Ct. 167, 97 L.Ed. 677. We, too, must conclude that for purposes of this appeal we may not assume that the Board will make (or in this case has made) an erroneous final decision because of the result it reaches on the temporary suspension application.

### No. 16,590

Involved in this appeal are § 404(a) of the Act, 49 U.S.C.A. § 1374(a), providing:

"It shall be the duty of every air carrier * * * to provide safe and adequate service, equipment, and facilities * * *"

and § 1002(a), 49 U.S.C.A. § 1482(a), which reads in part:

"Any person may file with the Administrator or the Board, as to matters within their respective jurisdictions, a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the Administrator or the Board to investigate the matters complained of. Whenever the Administrator or the Board is of the opinion that any complaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing. * * *"

Again three questions arise:

(a) Did Nebraska's allegations of inadequacy of service require a formal investigation by the Board?

(b) If not, did the Board here make necessary and adequate findings?

(c) If so, was the evidence sufficient to support those findings?

■ 1. *The need for formal investigation.* Nebraska argues in its first brief that the Board's duty under this section of the Act is comparable to that of the Interstate Commerce Commission under § 13 of the Interstate Commerce Act, 49 U.S.C.A. § 13, par. (1). That Act contains a sentence similar to the second sentence of § 1002(a) of the Federal Aviation Act concerning the duty of the agency to investigate. The Interstate Commerce Act section, however, does not contain a provision comparable to the third sentence of § 1002(a). We regard this as a vital distinction. The section must, of course, be construed as a whole. In so doing we conclude that its third sentence (the last one quoted above) has significance and that it and the second sentence, taken together, vest in the Administrator or the Board, as the case may be, discretionary powers of investigation in response to a filed complaint. See Davis, Administrative Law Treatise, 1958, Vol. 1, § 4.07, pp. 259–60; Jaffe, The Individual Right to Initiate Administrative Process, 1940, 25 Ia.Law Rev. 485, 520–1; Pan American-Grace Airways v. Civil Aeronautics Board, D.C. Cir., 1949, 178 F.2d 34, 36.

In its reply brief Nebraska in fact concedes that the Board need not grant a hearing on all complaints and that under the statute the Board may dismiss some complaints on the basis of the pleadings alone. This we feel takes us a long way toward a complete concession on the first question.

In any event, the rule of discretion requires that there be no abuse of discretion. We find none here. The Board's own rules, Rule 302.700 et seq., 14 C.F.R. 302.700, provide for a reasonable activation of § 1002(a). And a mere reading of the Board's order discloses a careful and detailed consideration for the allegations of Nebraska's complaint with particular concern for all the alleged inadequacy areas of insufficient connecting times, delayed service, inadequate commuter service and inadequate passenger service. The Board's actual acceptance of service deficiencies dulls Nebraska's basic arguments.

■ *2. The propriety of the findings.* Nebraska's argument here is a claim that the Board failed to make required "ultimate" findings supported by "basic" findings. Professor Davis in the cited work, Vol. 2, § 16.06, discusses ultimate facts and basic facts and concludes, p. 454, that "The principal motivating force, as revealed by the opinions, is the need of the reviewing court for a clear view of the basis for the agency's action * * *." This is supported by the cases. See, for example, Saginaw Broadcasting Co. v. Federal Communications Comn., 1938, 68 App.D.C. 282, 96 F.2d 554, 559–61, cert. den. 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Alabama Great Southern Railroad Co. v. United States, 1951, 340 U.S. 216, 228, 71 S.Ct. 264, 95 L.Ed. 225; Phelps Dodge Corp. v. Labor Relations Board, 1941, 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271; American Airlines v. Civil Aeronautics Board, 1956, 98 U.S.App.D.C. 348, 235 F.2d 845, 853, cert. den. 353 U.S. 905, 77 S.Ct. 668, 1 L.Ed.2d 666. This standard is met here. The Board found, basically, that Frontier had provided service of "reasonable" quantity and quality, that some poor service did exist but only as a natural consequence of initiating a new segment, that in spite of this the service was not "inadequate" within the meaning of § 404(a) of the Act, and that, ultimately, the facts stated did not warrant further investigation or action. With all this, we conclude, as we did with respect to the appeal in No. 16,589, that the findings were made with sufficient elaborateness to enable us to relate the evidence to them and to obtain a clear view of the basis of the Board's action.

■ *3. The sufficiency of the evidence.* Here again we have carefully examined the complete file of the proceedings before the Board and are satisfied that the material accompanying the pleadings constituted evidence sufficiently substantial to support the findings.

The orders in both appeals are therefore affirmed.