**REA EXPRESS, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,
Respondent,**

**and**

**Air Express International Corporation,
Intervenor.**

**No. 49, Docket 74–1251.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1974.

Decided Dec. 5, 1974.

---

Peter G. Wolfe, New York City (Arthur M. Wisehart, New York City, on the brief), for petitioner.

Barbara Thorson, Civ. Aeronautics Bd., Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, and Arnold P. Lav, Dept. of Justice, Washington, D. C., Thomas J. Heye, Gen. Counsel, Civ. Aeronautics Bd., O. D. Ozment, Deputy Gen. Counsel, and Glen M. Bendixsen, Assoc. Gen. Counsel, Washington, D. C., on the brief), for respondent.

John M. Gibbons, Washington, D. C. (Stroock & Stroock & Lavan and Henry J. Silberberg, New York City, on the brief), for intervenor.

Before HAYS, ANDERSON and MANSFIELD, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

REA Express, Inc. (REA) is a common carrier which provides an expedited air service advertised as "Air Express" or "REA Air Express." The Civil Aeronautics Board (Board) regulates REA's activities as an air carrier and periodically has reviewed and approved REA's service. Although it is not the only company which provides an expedited air service, appellant claims that "REA Air Express" has several unique features of direct benefit to shippers.[1] In addition, REA has been granted the service mark "Air Express" by the United States Patent Office and has spent substantial sums in advertising that term. The Board on various occasions has recognized the distinctiveness of REA's air service. See, Air Freight Forwarder Case, 9 C.A.B. 473, 488 (1948).

The Civil Aeronautics Board also regulates the activities of Air Express International Corporation (International), intervenor, which has been authorized to conduct its business as a domestic and international air carrier under that name, with slight interruption, since 1935. Similarly Domestic Air Express, Inc. (Domestic) has been operating a domestic service under its present name since 1956.

On October 4, 1972, REA filed a complaint alleging that the utilization of the words "Air Express," long associated with a distinctive REA service, in the corporate titles of International and Domestic was "inherently likely to confuse Air Express customers of REA and make them believe that [their] services are really those of REA," and constituted an unfair method of competition within the meaning of § 411 of the Federal Aviation Act of 1958, 72 Stat. 769, 49 U.S.C. § 1381.[2] REA requested the Board to order International and Domestic to cease and desist from further use of the allegedly confusing trade names.

---

1. These alleged benefits include (1) service to all airport cities in the nation as a single carrier, with integrated operation and under a single through way bill with single carrier responsibility, (2) carriage of virtually all tendered commodities, and (3) REA's arrangement for priority placement on aircraft.

2. Section 411 of the Federal Aviation Act, 49 U.S.C. § 1381, provides as follows:

"The Board *may*, upon its own initiative or upon complaint by any air carrier . . . *if it considers that such action by it would be in the interest of the public,* investigate and determine whether any air carrier . . . has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof. If the Board shall find, after notice and hearing, that such air carrier . . .

After receipt of answers from International and Domestic, Richard J. O'Melia, Director of the Board's Bureau of Enforcement, notified the parties on June 8, 1973 of his determination not to institute an investigation because REA had failed to establish a *prima facie* case of public confusion, inasmuch as the corporate names were sufficiently dissimilar to preclude inherent or likely public confusion and REA had failed to show any actual public confusion.

REA thereupon filed motions with the Board to review O'Melia's determination, and to amend its complaint to allege that International's and Domestic's use of the words "Air Express" had resulted in actual public confusion. REA attached an affidavit to those motions setting forth 22 alleged instances of customer confusion between May 31, 1973 and June 19, 1973. REA further stated in its supporting affidavit that the New Jersey Telephone Company's internal listings set forth Air Express International Corporation as a subordinate listing under REA Express; that many telephone calls were received both by petitioner and International and Domestic from confused shippers; and that REA often received mail intended for Domestic or International. REA claimed that it had not compiled more exhaustive data on public confusion because it had been previously owned by the railroads which would not allow it to do so, but offered to submit additional evidence at a proposed future hearing.

In an order filed August 8, 1973, affirming O'Melia's determination, the Board, without an investigation, found that the complaint, even as amended, failed to state a cause of action warranting the assumption of jurisdiction under § 411 because the mere similarity of names did not result in substantial public confusion, and the conclusory nature of the affidavit lacked sufficient specificity, especially in light of the lack of previous complaints about the use of the words

"Air Express" to meet the "public interest" jurisdictional standard. REA's petition for reconsideration was also denied.

The question on appeal is whether the Board had discretion to dismiss a complaint alleging an unfair method of competition because insufficient facts were alleged to establish the reasonable likelihood that the admittedly unfair method of competition caused "specific and substantial" public injury.

Congress has committed to the Board's discretion, by the terms of § 411, the questions whether and under what circumstances it will initiate an investigation in response to a formal complaint. See generally, Transcontinental Bus System, Inc. v. Civil Aeronautics Board, 383 F.2d 466, 478 (5 Cir. 1967); Flying Tiger Line, Inc. v. Civil Aeronautics Board, 121 U.S.App.D.C. 332, 350 F.2d 462, 465 (1965). This discretion, however, is not absolute and decision by the Board is a reviewable final order under 49 U.S.C. § 1486. *See,* Trailways of New England v. Civil Aeronautics Board, 412 F.2d 926, 931 (1 Cir. 1969). The function of a reviewing court, in light of the nature of the Board's authority, is the limited one of ensuring that the Board has not abused its discretion. *See,* Pan American-Grace Airways v. Civil Aeronautics Board, 85 U.S.App.D.C. 297, 178 F.2d 34, 36 (1949). Under the narrow scope of review mandated by this standard, the Board's determination should not be disturbed if, on the record as a whole, it is supported by substantial evidence. Golden State Bottling Co. v. NLRB, 414 U.S. 168, 172, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); Universal Camera Corp. v. NLRB, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951); American Cyanamid Co. v. Federal Trade Commission, 363 F.2d 757 (6 Cir. 1966); American Airlines v. Civil Aeronautics Board, 97 U.S.App. D.C. 324, 231 F.2d 483, 486 (1956).

It has long been recognized that, under the above standard, an ad-

---

is engaged in such unfair or deceptive practices or unfair methods of competition, it shall order such air carrier . . . to

cease and desist from such practices or methods of competition." (Emphasis added.)

ministrative agency properly exercises its discretionary authority when it refuses to investigate a complaint, which, accepting as true its factual allegations, fails to establish a *prima facie* claim for relief. Nebraska Department of Aeronautics v. Civil Aeronautics Board, 298 F.2d 286, 295 (8 Cir. 1962); Flight Engineers' International Association v. Civil Aeronautics Board, 118 U.S.App.D.C. 112, 332 F.2d 312, 314–315 (1964). The Board in this case found that REA failed to establish a *prima facie* claim for injunctive relief because insufficient facts were alleged to establish the likelihood of "specific and substantial" public confusion. It accordingly dismissed the complaint without an investigation. Because it is arguable that REA in its amended complaint could have established a *prima facie* case under some less rigorous standard than the "specific and substantial" criteria adopted by the Board, we must determine the reasonableness of the Board's interpretation of the type of claim for which it may grant relief under § 411, which is concerned neither with the punishment of wrongdoing nor with the protection of injured competitors, but rather with protection of the public interest. American Airlines v. North American Airlines, 351 U.S. 79, 83, 76 S.Ct. 600, 100 L.Ed. 953 (1956). It has been held that an administrative agency, with authority similar to that of this Board, may not employ its powers to vindicate private rights. Federal Trade Commission v. Klesner, 280 U.S. 19, 25–30, 50 S.Ct. 1, 74 L.Ed. 138 (1929); *see also,* Pan American World Airways v. United States, 371 U.S. 296, 306, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). If the Board were to assume jurisdiction over all such matters, the public-private distinction which lies at the base of its jurisdiction under § 411 would be hopelessly blurred. The maintenance of such distinction requires that the Board assume jurisdiction under § 411 only in those cases where the injury to the public is substantial.

 There is no question that the creation of name confusion may consti-

tute an unfair method of competition within the meaning of § 411 if the name denotes a particular carrier or a specific service. American Airlines v. North American Airlines, *supra.* In this case, REA alleged that the multiple use of the term "Air Express", incorporated in a number of names has resulted in public confusion because of the services it provides and the distinctive type of its business. In order to ensure that such confusion affected the public interest generally and not merely petitioner's interest in sharpening its public identity, the Board was correct in finding that the use of similar names by competitive carriers violates § 411 only to the extent that they result in "specific" and "substantial" public confusion. In order to establish this, REA should have set out instances of frequent and common confusion which had persisted over a substantial span of time. The 22 instances of actual confusion, recited in petitioner's affidavit, took place within a three-week period and hardly evidence the type of allegation necessary to establish a *prima facie* case for relief under § 411. The confusion alleged resulted from the multiple use of the descriptive term "Air Express," which means simply the speedy delivery of goods by air and not any company's particularized kind of service. REA had the additional burden in this case, therefore, of pleading facts which tend to establish the existence of substantial confusion as to carrier identity or character of service, but it did not do so.

 The claim that the railroads had prevented REA from collecting information to establish the existence of substantial confusion as to carrier identity or character of service does not affect petitioner's burden of establishing a *prima facie* claim for relief, nor does it mitigate REA's failure to meet that burden in this case. REA argues, nevertheless, that the Board acted improperly because it failed to make findings to support its conclusion. Although it is often true that a court cannot review an administrative determination unless the

agency sets forth the reasons and evidence in support of its position, Trailways of New England v. Civil Aeronautics Board, *supra,* 412 F.2d at 932, this is not the case when, as here, the agency has dismissed a complaint for failure to establish a *prima facie* case. To require the Board to marshal evidence which showed there was, in fact, no "significant and substantial" public confusion, as petitioner would have us do, would place the burden of proof upon the wrong party. Such a showing, difficult at best, is not required for appeals courts to rule fairly on the reasonableness of an administrative agency's exercise of discretion.

The Board's refusal to initiate an investigation because REA failed to plead sufficient facts to establish a *prima facie* case for relief under § 411 of the Federal Aviation Act is affirmed.[3]

---

**3.** Nothing we have said herein prejudices REA's right to commence a private suit, involving, as it would, a different cause of action from the present one, the dismissal of which we here affirm.