**FARGO PACKING CORPORATION,** **North Dakota Frozen Food Locker Assoc., Shy-Ann Meat Service and Supply, Inc., and Theron Strinden, Plaintiffs,**

**v.**

**Clifford HARDIN, United States Secretary of Agriculture, Washington, D. C.; Dr. Lester H. Burkert, U.S.D.A., Northern Regional Director, St. Paul, Minn.; and Dr. Gerald D. Watson, U.S.D.A., Acting Officer in Charge of North Dakota, Defendants.**

**Civ. No. 1029.**

United States District Court, D. North Dakota, Southwestern Division.

May 15, 1970.

---

Joseph A. Vogel, Jr., Mandan, N. D., for Fargo Packing Corp., North Dakota Frozen Food Locker Association, Shy-Ann Meat Service and Supply, Inc., and Theron Strinden.

Harold O. Bullis, U. S. Dist. Atty., Fargo, N. D., Ronald D. Cipolla, Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C., Stuart Schiffer, Atty. for U. S. Dept. of Justice, Washington, D. C., for Clifford Hardin, U. S. Sec'y of Agriculture; Dr. Lester H. Burkert, U. S. D. A., (Northern Regional Director, St. Paul, Minn.) Dr. Gerald D. Watson, U. S. D. A.

## MEMORANDUM AND ORDER

REGISTER, Chief Judge.

This is an action for a temporary restraining order, preliminary injunction, and declaratory relief, brought pursuant to the provisions of Rule 65, Federal Rules of Civil Procedure, and Title 28, U.S.C.A. Sec. 2201 (Federal Declaratory Judgment Act). It is alleged that jurisdiction is also provided by Title 28, U.S. C.A. Sec. 1331. Upon a proper showing, a temporary restraining order was duly issued and the matter is now before the Court following hearing on Plaintiffs' motion for a preliminary injunction. In support of their motion for preliminary injunction the Plaintiffs have filed herein a large number of affidavits, with exhibits attached. Plaintiffs' brief in support of their motion was duly filed, followed by memorandum in reply to Defendants' memorandum. Defendants caused to be filed their return in opposition to Plaintiffs' motion, including a large number of supporting affidavits (some also with exhibits attached), together with memorandum in support of such opposition, with attached appendix.

The statutes here involved are Title 21, U.S.C.A., Chapter 12 (Public Law 90-201, 81 Stat. 584), commonly known as the "Wholesome Meat Act," and Chapter 36–23.1, N.D.C.C., known as the North Dakota Meat Inspection Act, which was passed in 1969 by the North Dakota Legislature. The Wholesome Meat Act (hereinafter referred to as the "Act") took effect on December 15, 1967, and consists of Sections 601–691, inclusive. This 1967 Act substantially amended and revised the 1907 Meat Inspection Act, 34 Stat. 1260. It appears that the provisions of the 1907 Act are virtually wholly incorporated in the 1967 Act; however, there are modifications and additional provisions, particularly with reference to the enforcement of the Act, and include what was enacted and codified as 21 U.S.C.A. Sec. 661. Section 661(a) states that "It is the policy of the Congress to protect the consuming public from meat and meat food products that are adulterated or misbranded and to assist in efforts by State and other Government agencies to accomplish this objective." The statute expressly authorizes the Secretary of Agriculture, "whenever he determines that it would effectuate the purposes of this chapter to cooperate with the appropriate State agency in developing and administering a State meat inspection program in any State which has enacted a State meat inspection law that imposes mandatory ante mortem and post mortem inspection, reinspection and sanitation requirements that are at least equal to those under subchapter I of this chapter, with respect to all or certain classes of persons engaged in the State in slaughtering cattle, sheep, swine, goats, or equines, or preparing the car-

casses, parts thereof, meat or meat food products, of any such animals for use as human food solely for distribution within such State," (Sec. 661(a) (1), and further provides for specific actions that the Secretary is authorized to take as being within the meaning of the term "cooperation" as used in the Act.

It is obvious that Congress was cognizant of the fact that, at the time of the passage of the Act, many states did not have legislation providing for a state program which contained requirements "equal to" those contained in the Act, that in many States the legislative assembly met only biennially, and was of the view that such States should have an opportunity to pass the necessary legislation before Federal action might be taken by the Secretary under the Act.

Action was taken by North Dakota by the passage in 1969 of the legislation stated, and the provisions of the state legislation were approved in May, 1969, by the proper Federal official for the purposes of a cooperative agreement under the State-Federal Cooperative portion of the Act. Such an agreement was thereupon entered into. In May, 1969, a representative of the Secretary expressed an official opinion that, while the State legislation was adequate for the purposes of the cooperative agreement, "The law as enacted is clearly deficient for purposes of [the 'equal to' requirements of] the Federal Act." Inspections were made by officials of the United States Department of Agriculture of many meat plants in this State in the spring of 1968, and again in 1969. In the fall of 1969, officials from the United States Department of Agriculture furnished to Dean E. Flagg, D. V. M., Executive Officer, State Veterinarian of the Livestock Sanitary Board at Bismarck, North Dakota, a copy of a status report evaluation of the state meat inspection program. In this report, the following appears:

"The exemption provision of the North Dakota law does not require that exempt custom slaughterers must limit their operations to custom services only. It appears to exempt those carcasses or parts which are being prepared for custom use by a plant that also engages in buying and selling meat and meat food products. This provision is therefore less restrictive than the exemption provision of the Federal Act. This is a major problem area, in terms of the "equal to" wording of the Act, which will require correction prior to December 15, 1970. Some of the penalty provisions are less than those imposed by the Federal Act, although these are not as significant relative to the December 1970 deadline, as the difference in exemptions."

The Court here notes that the record discloses commendable, consistent, and conscientious efforts on the part of Doctor Flagg to cooperate with the Secretary and his representatives in implementing and developing the provisions of the State-Federal cooperative agreement. However, the State legislation was clearly deficient concerning the "equal to" requirements of the Federal Act, and the available State finances were clearly inadequate to comply with the 50% requirement of the Act.

Sec. 661(c) (1) of the Act provides that:

"If the Secretary determines, after consultation with the Governor of the State, or representative selected by him, that such requirements have not been developed and activated, he shall promptly after the expiration of such two-year period designate such State as one in which the provisions of subchapters I and IV of this chapter shall apply to operations and transactions wholly within such State."

The Secretary did, on March 15, 1970 (and thus after the expiration of the two-year period provided) designate North Dakota as a State in which the provisions of subchapters I and IV of the Act shall apply to operations and transactions wholly within the State, and published in the Federal Register a "Notice of Designation under Federal Meat Inspection Act" of North Dakota. 35 Fed. Reg. 4652. Thus, under the Act, North

Dakota became subject to Federal Meat Inspection on April 15, 1970, and the Secretary refused to delay such designation for an additional year.

Plaintiffs contend that the designation of the State of North Dakota by the Secretary, as aforesaid, was unlawful and wrongful, will result in irreparable harm, damage and injury to the Plaintiffs and other persons similarly affected, and that there is no adequate remedy at law. They further contend that it will result in immeasurable economic loss and services to small rural communities. Plaintiffs seek a preliminary injunction enjoining such inspection pending trial on the merits and a judgment setting aside the Secretary's determination designating the State of North Dakota subject to Federal inspection April 15, 1970.

Defendants challenge the jurisdiction of the Court, contending that the actions of the Secretary under the Act are final and not subject to judicial review (Trans-World Airlines v. Civil Aeronautics Board, 2 Cir., 184 F.2d 66, 70, cert. den. Sparks v. Civil Aeronautics Bd., 340 U.S. 941, 71 S.Ct. 504, 95 L.Ed. 679); deny that the action of the Secretary was wrongful or unlawful; and contend that the requested preliminary injunction should be denied because of Plaintiffs' failure to show that they are entitled to such relief or that there is a strong likelihood of success on the merits in favor of Plaintiffs (Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921, 925), or that the granting of such preliminary relief is in the public interest (Virginia Petroleum Jobbers Association v. Federal Power Commission, supra).

Both in briefs and during oral argument, several nice and challenging points of law were suggested by the parties. However, due largely to the necessity of a prompt determination and the effect of the Court's opinion as hereinafter stated, the Court will not devote the time and effort for necessary research except as to the critical and controlling issues necessary for such determination.

■ It is true, as argued by counsel for Defendants, that it appears the exercise by the Secretary of his discretion concerning certain aspects of the Act is final and not subject to review. For example, the Secretary is expressly authorized to cooperate with appropriate State agencies "whenever he determines that it would effectuate the purposes of this chapter" (21 U.S.C.A. Sec. 661(a), and the actions to be taken by the Secretary under the provisions of Sec. 661(c) (1) are predicated on the proposition "If the Secretary has reason to believe * * *." The Court, of course, recognizes that Section 10 of the Administrative Procedure Act, 5 U.S.C.A. Sec. 701, precludes judicial review of administrative action "committed to agency discretion by law," and under certain circumstances it is clear that the determinations of the officer to whom discretion is granted are final and beyond review. See: Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788, and Kendler v. Wirtz, 3 Cir., 388 F.2d 381.

"The Administrative Procedure Act, 80 Stat. 392, 5 U.S.C. § 701(a), allows judicial review of agency action except where '(1) statutes preclude judicial review or (2) agency action is committed to agency discretion by law.'", and

"Whether agency action is reviewable often poses difficult questions of congressional intent; and the Court must decide if Congress has in express or implied terms precluded judicial review or committed the challenged action entirely to administrative discretion." Barlow v. Collins, 397 U.S. 159, 90 S. Ct. 832, 25 L.Ed.2d 192.

■ From a careful examination of the Act as a whole, the Court is satisfied that it does have jurisdiction to review certain determinations of the Secretary which are herein challenged, and in particular the one which appears to be basic. Plaintiffs contend that in certain particulars the Secretary acted unlawfully, and it appears that this Court has limited jurisdiction herein—that is, jurisdiction to construe the applicable statutes to de-

termine whether the Secretary has exceeded his authority. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503.

■ The Plaintiffs specifically seek a review:

1. of the Secretary's discretion designating North Dakota subject to Federal inspection;

2. of the conduct by the Secretary and the North Dakota Livestock Sanitary Board responsible for the enforcement of the Federal-State cooperative agreement;

3. of the Secretary's "legal interpretation" of Title 21, U.S.C.A., Section 623 (custom exemption), and its effect upon the meat packing and processing plants in North Dakota;

4. of the Secretary's "legal conclusion, based upon his interpretation of said Section 623 (custom exemption) that Chapter 36–23.1 NDCC permits a custom exemption that is in conflict with the Federal Act";

5. of the alleged failure of the Secretary to publish regulations enforcing the Federal Act, as required by law; and

6. the application by the Federal inspectors of allegedly unreasonable regulations as to construction requirements under the Act.

The Court has before it the lengthy affidavit of Richard E. Lyng, Assistant Secretary of Agriculture of the United States, who states he has personal knowledge and familiarity with the facts and circumstances giving rise to the designation of the State of North Dakota under the Act. To it are attached copies of letters and other documents which support his statements, and which are pertinent. Such affidavit, with exhibits attached, sets forth in detail the necessary data and information. Plaintiffs' counsel does not dispute the correctness of the statements of facts contained in Mr. Lyng's affidavit (though he questions some of the affiant's conclusions expressed therein), nor does he dispute the existence and genuineness of correspondence and other written instruments, copies of which are attached to such affidavit as exhibits. It would unduly lengthen this opinion to itemize in any detail the steps taken by the Secretary prior to such designation. However, on October 27, 1969, in reply to a letter from Mr. Lyng, The Honorable William L. Guy, Governor of North Dakota, wrote, in part: "Corrective measures in the three areas which you mention in your letter cannot be attempted until the next session of the legislature which will begin in January, 1971. Future progress of the program must necessarily be delayed until legislative action can be taken." Thereafter, in a letter dated November 14, 1969, the Acting Secretary wrote to Governor Guy, referred to the requirement of the Act that a State be notified, by 30 days prior to two years after enactment of the Act, if such State has not been found equal to Federal requirements; called his attention to the provision of the Act which permitted an extension of time of one year if there be reason to believe that the State will be able to fully activate a program within that period; stated that it did not appear that this could be accomplished in North Dakota within such period of time; and invited the opportunity to further review the matter with State authorities. On December 19, 1969, Governor Guy wrote to the Secretary, as follows:

"This is to acknowledge that the United States Department of Agriculture has publicly announced it would assume the responsibility of enforcing the Wholesome Meat Act in North Dakota.

The State Emergency Commission met yesterday to make a final decision as to whether or not North Dakota would appropriate emergency funds sufficient to qualify us as a state which could and would enforce the federal act. The Emergency Commission declined to appropriate the necessary funds and I, therefore, consider North Dakota a state which will not enforce

by state appropriation and personnel the Wholesome Meat Act."

It should be noted that the Act specifically provides that "If the Secretary has reason to believe" by 30 days prior to the expiration of two years that a State has failed to develop or is not enforcing requirements "at least equal to" those of the Act, *"he shall* promptly notify the Governor of the State of this fact." [Emphasis added.] Further, "If the Secretary determines, after consultation with the Governor of the State * * * that such requirements have not been developed and activated, *he shall promptly* after the expiration of such two-year period designate such State * * *." [Emphasis added.] "Provided, That *if the Secretary has reason to believe* that the State will activate such requirements within one additional year, he may delay such designation for such period * *." [Emphasis added.] Clearly, in view of the facts before this Court, after receipt of the last letter from Governor Guy, it was the mandatory duty of the Secretary to promptly make such designation, and there existed no factual basis thereafter for a belief by the Secretary which would afford a statutory basis for delay in such designation for the one-year period.

■■ From a careful analysis of the contentions of the parties, and from replies to inquiries from the Court during oral argument, it appears that the one basic contention of the Plaintiffs concerning which the Court has jurisdiction to review, is the matter referred to in numbers 1 and 2, supra, which involves the "custom exemption" portion of the Act (21 U.S.C.A. § 623), together with Section 36–23.1–03, N.D.C.C. Section 623(a) provides for the exemption from inspection requirements of the Act, personal slaughtering and custom slaughtering for personal, household, guest and employee uses, "Provided, that such custom slaughterer does not engage in the business of buying or selling any carcasses, parts of carcasses, meat or meat food products of any cattle, sheep, swine, goats or equines, capable of use as human food." Section 36–23.1–03, N.D.

C.C., sets forth certain exceptions to the provisions of the chapter as to required inspection of animals, etc., and under paragraph 3 provides such exception where:

"3. The slaughtering is performed by any person as a custom service for the owner of the animal, and the carcass or the parts thereof are for the exclusive use of such owner and the members of his household and his nonpaying guests and employees, *regardless of whether or not* such custom service slaughterer is engaged in selling inspected carcasses or the parts thereof, meat or meat food products at wholesale or retail in or on the same plant or premises where such custom service slaughtering is performed." [Emphasis added.]

It seems clear that the statutory language used in both the Federal and State statutes is free from ambiguity. The requirements for "custom exemption" under the Act are much more limited than those provided in the State statute. It is obvious that the requirements in the State statute are not "equal to" those contained in the Act. It would seem that the meaning of Sec. 623(a) is clear, that the term "interpretation" is a misnomer, and that the meaning of the words of the "custom exemption" portion of the Act is as understood and ascribed to it by the Secretary. Thus the "custom exemption" section of the Act is purely statutory; those who may be embraced within its provisions are precisely limited by its language; there is no discretion vested in the Secretary as to its application; and it is the duty of the Secretary to enforce this provision of the Act as written. As the meaning of the words used is clear, it must be concluded that the intent of Congress in passing the Act was in accordance therewith and as expressed thereby.

■ In this connection the Plaintiffs in effect argue that the so-called "guidelines" issued by the Secretary as to the enforcement of this provision of the Act are invalid and in excess of his authority.

The Defendants contend that these so-called "guidelines" were nothing more than working instructions or "Working Information on Custom Exemption" issued by the Department of Agriculture to and for the use and convenience of Government inspectors. The Plaintiffs concede the propriety of all but two of such "guidelines" or "working instructions." Without quoting the document involved, it clearly appears that one of the challenged items is squarely based upon Sec. 623(c) relating to the adulteration and misbranding provisions of the Act, and the other is well within the general authority of the Secretary relating to inspection of a meat plant for the purpose of determining whether it constitutes a danger to public health.

■ Insofar as Plaintiffs' contention that the Secretary failed to properly publish regulations is concerned, the Court finds no violation of law. It appears that the meat inspection regulations issued under the 1907 Act were published in the Federal Register. See: 9 C.F.R., Parts 301–329. A "Notice of Proposed Rule Making" proposing amendments to the Federal meat inspection regulations was published in the Federal Register on August 14, 1969. There is no evidence that the proposed regulations, including those relating to exemptions, have been officially withdrawn. Also, it appears that the parties hereto had "actual and timely notice" of the regulations and terms thereof. Title 5, U.S.C.A. Sec. 552 (a) (2) (ii).

■ The record discloses no violation of law and no action in excess of the authority granted the Secretary under the Act. It is the Court's opinion that the granting of Plaintiff's motion for a temporary injunction would be an abuse of discretion, and for reasons herein stated said motion will be denied.

Counsel for the Plaintiffs has argued forcefully concerning some matters that are legally irrelevant and beyond the power of this Court to remedy. It may be well to refer to some of these matters. There appears to be no question but that the designation of North Dakota as a state under the Federal Meat Inspection Act will have a very substantial economic impact on many individuals and communities in North Dakota. The Court is aware of this fact and is concerned about it. It may also be true that the effect of such designation is or will be much more extensive than anticipated by Congress. However, the necessity for and the wisdom of the provisions of the Act were for the sole determination of the legislators. So long as the actions taken by the Secretary are within the framework of the Act they are not subject to judicial review. The Court has jurisdiction to determine whether the Secretary violated the law or exceeded his authority; if he did not, this Court has no power to substitute its judgment for that of the Secretary.

Counsel for the Plaintiffs has also referred to various proposed amendments to the Act, now pending in Congress, with the thought that if some are passed there might be provisions which would constitute a basis for postponement or delay in the enforcement of the Act in this State. He has also referred to the possibility that the Emergency Commission or the 1971 Legislative Assembly of this State might make available necessary funds wherewith a state program containing "equal to" provisions could be established, and the designation by the Secretary thereafter revoked. These matters, also, are beyond the consideration of this Court. Under the circumstances here prevailing, this Court has absolutely no authority or jurisdiction, by any means, to delay or postpone enforcement of the Act, regardless of the likelihood of favorable Congressional legislation or of possible future action by the State.

In conclusion, it affirmatively appears from the entire record herein (including responses of counsel to inquiries by the Court during oral argument) that (1) if a trial on the merits of the pending matter were held, there is absolutely no likelihood of success on the part of the Plaintiffs, and (2) the Court lacks jurisdic-

tion to grant the relief (or any part thereof) prayed for by the Plaintiffs.

Accordingly, it is

ORDERED that the temporary restraining order heretofore entered herein be, and the same hereby is, *vacated*; and it is further

ORDERED that Plaintiffs' motion for preliminary injunction be, and the same hereby is, in all things *denied*; and it is further

ORDERED that Plaintiffs' Complaint and cause of action be, and the same hereby are, in all things, *dismissed*. Counsel for Defendants will forthwith prepare and submit appropriate form of judgment.

Bismarck, North Dakota, this 15th day of May, 1970.