MICHIGAN MEAT ASSOCIATION et al., Plaintiffs,

v.

John R. BLOCK, Secretary of the United States Department of Agriculture,* Defendant.

No. G78–438 CA6.

United States District Court, W. D. Michigan, S. D.

May 20, 1981.

David W. Marra, Muskegon, Mich., Richard Siegel Washington, D. C., (American Assoc. of Meat Processors), and Robert S. Engel, Muskegon, Mich., for plaintiffs.

C. Max Vassanelli, U. S. Dept. of Justice, Washington, D. C., Agnes Kempker-Cloyd Asst. U. S. Atty., Grand Rapids, Mich., for defendant; Gregory Cooper, U. S. Dept. of Agriculture, Washington, D. C., of counsel.

Robert J. Taube, Asst. Atty. Gen., Agriculture & Lottery Division, Lansing, Mich. for State of Michigan.

* This action was commenced in 1978, while Robert Bergland was Secretary of Agriculture. John R. Block is substituted as the party-defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter is before this Court pursuant to motions for summary judgment filed by all parties. At the March 13, 1981, hearing on these motions, all parties advised the Court that this matter was ready for adjudication without need of further hearings or consideration conducted by this Court. Accordingly, the Court bases its ruling on the briefs and arguments of counsel, the affidavits submitted in this cause, and the documents filed in support of or in opposition to the various motions for summary judgment.

Plaintiffs' complaint seeks injunctive relief from certain conduct of the Government in enforcing certain provisions of the Federal Meat Inspection Act, 21 U.S.C. §§ 601–680, and certain regulations promulgated by the Secretary of Agriculture in aid of enforcement of that Act. Specifically, plaintiffs seek an injunction to enjoin the Secretary of Agriculture from enforcing such provisions of the Federal Meat Inspection Act (FMIA) and the regulations promulgated thereunder as may prohibit the entry of state-inspected meat and food products into interstate commerce or into federally-inspected meat packing or storage facilities. Plaintiffs allege that the statutory and regulatory provisions which they cite violate their rights to substantive due process and to equal protection of the laws, and therefore plaintiffs contend that the challenged legislative and regulatory schemes are unconstitutional. None of the parties has advised the Court of the existence of any authorities upholding the FMIA or the regulations promulgated thereunder, and the Court has not found any cases resolving the constitutional challenges urged by the plaintiffs in this case. Accordingly, this Court treats the issues raised herein as matters of first impression.

In their amended complaint, plaintiffs allege that they are victims either of substantive infringements on their Fifth Amendment due process rights or of disparate treatment in the method of enforcing the FMIA and the regulations promulgated thereunder. Plaintiff Michigan Meat Association is an affiliation of individuals and businesses engaged in the slaughtering or processing of meat or meat food products. Its membership includes both members whose products are inspected under the federal meat inspection program and members whose products are inspected under Michigan's state meat inspection program. Plaintiffs allege that the FMIA and various regulations promulgated and enforced by the Secretary of Agriculture restrict them from selling their meat and meat food products to federally-inspected meat packing or storage facilities, and further restrict them from selling to any meat packing or storage facilities in any state other than Michigan unless a federal inspection seal is first secured. Plaintiffs also allege that the effect of the Government's regulations and the statutory provisions functionally is to prevent plaintiffs from selling any of their meat or meat food products to any establishments which might fear that plaintiffs' products will become commingled with other food products for which federal inspection seals have been secured and as to which interstate commerce is permitted.

Plaintiffs contend that the Government's distinction between the federal meat inspection program and Michigan's state meat inspection program constitutes disparate treatment not rationally based on the promotion of any valid or legitimate public purpose. Plaintiffs urge this Court to hold that the Government has denied state-inspected meat and meat food products access to interstate commerce in a way which violates plaintiffs' rights to equal protection of the laws. Specifically, plaintiffs contend that the Secretary's failure to designate Michigan as a state which has not complied with federal guidelines in accordance with 21 U.S.C. § 661(c)(1) is tantamount to a finding that Michigan's state meat inspection program is "at least equal to" the standards set forth in the balance of the FMIA. Accordingly, plaintiffs ask this Court to find that the Government's treatment of meat and meat food products inspected under Michigan's state meat inspec-

tion program is inconsistent with its treatment of similar products inspected under the federal meat inspection program. Such alleged disparate treatment—although possibly having a rational basis in the past—is challenged in light of the Secretary's failure to designate Michigan as a state not in conformity with federal meat inspection criteria.

Plaintiffs also allege that the FMIA and its underlying regulations unconstitutionally create an irrebuttable presumption that Michigan state-inspected meat is unfit for interstate commerce or for packing or storage in facilities in which there exists a potential for commingling of Michigan state-inspected meat with federal meat or meat products. Plaintiffs contend that such conduct is particularly disingenuous since the Secretary has not cited Michigan for not conforming to federal inspection minima, and therefore plaintiffs would have this Court treat the Secretary's failure to designate Michigan's state meat inspection program as a determination that Michigan's standards are "at least equal to" federal standards. Accordingly, plaintiffs ask this Court to find that no rational basis exists for the Government's continued enforcement of the FMIA and the regulations at least insofar as Michigan's state meat inspection program is concerned.

The Court has reviewed the FMIA and the Secretary's regulations *in toto*. The purposes articulated by Congress as the rationale behind enactment of the FMIA are found in Section 2 of Title I of the Act:

> Meat and food products are an important source of the Nation's total supply of food. They are consumed throughout the Nation and the major portion thereof moves in interstate or foreign commerce. *It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged.* Unwholesome, adulterated, or misbranded meat or meat food products impair the effective regulation of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and result in sundry losses to livestock producers and processors of meat and meat food products, as well as injury to consumers. ... It is hereby found that all articles and animals which are regulated under this chapter are either in interstate or foreign commerce or substantially affect such commerce, and that regulation by the Secretary and cooperation by the States and other jurisdictions as contemplated by this chapter are appropriate to prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers.

21 U.S.C. § 602 (emphasis supplied). While plaintiffs are correct that an important purpose behind the FMIA is to attempt to assure consumers of wholesome meat and meat food products, it is clear from Section 2 that this is not the only purpose articulated by Congress. As the court in *Federation of Homemakers v. Hardin*, 328 F.Supp. 181, 184 (D.D.C.1971), observed:

> The primary purpose of the Wholesome Meat Act is to benefit the consumer *and* to enable him to have a correct understanding of and confidence in meat products purchased. Prohibitions against mislabeling are an integral part of this purpose. [Emphasis supplied.]

Accordingly, it is evident to this Court that Congress identified at least the following as bases for enacting the FMIA: (1) assuring wholesomeness of meat and meat food products; (2) establishing standards for proper marking and labeling of meat and meat food products; and (3) assuring proper branding and packaging of meat and meat food products. The balance of the FMIA and the regulations promulgated thereunder are geared toward effectuating these purposes.

Nevertheless, plaintiffs contend that the enforcement of the FMIA and the regulations in Michigan has resulted in viola-

tions of rights to substantive due process and equal protection of the laws. The touchstone of plaintiffs' allegations is Section 301(c)(1) of Title III of the Act, which provides in relevant part:

> If the Secretary has reason to believe ... that a State has failed to develop or is not enforcing [meat inspection] requirements at least equal to those imposed under [this Act], he shall promptly notify the Governor of the State of this fact. If the Secretary determines, after consultation with the Governor of the State ..., that such requirements have not been developed and activated, he shall promptly ... designate such State as one in which the provisions of [this Act] shall apply to operations and transactions wholly within such State .... The Secretary shall publish any such designation in the Federal Register and, upon the expiration of thirty days after such publication, the provisions of [this Act] shall apply to operations and transactions and to persons, firms, and corporations engaged therein in the State to the same extent and in the same manner as if such operations and transactions were conducted in or for commerce.

21 U.S.C. § 661(c)(1). It appears to be uncontroverted that Michigan's state meat inspection program never has been "designated" as a state "in which the provisions of [the FMIA] have not been developed and activated." Section 301(c)(4) of Title III further provides:

> The Secretary shall ... periodically ..., but at least annually, review the requirements, including the enforcement thereof, of the several States not designated under this [subsection], with respect to the slaughter, and the preparation, storage, handling and distribution of carcasses, parts thereof, meat and meat food products, of such animals, and inspection of such operations, and annually report thereon to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture and Forestry of the Senate in the report required under [another section of the Act].

21 U.S.C. § 661(c)(4). The parties appear to agree that Michigan's state meat inspection program never has been "reported" to the Congress as failing to meet with minimum federal meat inspection standards. Indeed, plaintiffs contend that Michigan's state meat inspection standards *exceed* federal minima. Accordingly, it is argued that meat and meat food products which pass the arguably more stringent Michigan state meat inspection standards cannot enter the stream of interstate commerce and cannot be packed or stored with federally-inspected meat simply because of the proscriptions of the FMIA and the regulations. The Court is sympathetic toward the plight faced by plaintiffs. If the Court takes all of plaintiffs' allegations as true—which it must do if it were to grant the Government's motion for summary judgment—then it would appear that plaintiffs' meat and meat food products are at least as assuredly wholesome, if not more assuredly wholesome, than meat and meat food products which are subjected to and pass federal inspection. The only difference would be that federally-inspected meat could be shipped in interstate commerce while state-inspected meat could be shipped only in intrastate commerce. Concurrently, state-inspected meat could not be stored with federally-inspected meat for fear of commingling of the two "types" of meats, *viz.*, the meat "worthy" of being shipped in interstate commerce and the meat not "worthy" of being shipped in interstate commerce.

The Court, however, chooses not to view this matter as a case of the Secretary of Agriculture deciding the "worthiness" or degree of "wholesomeness" of the various "types" of meats. Rather, the Court believes that Congress has charged the Secretary with the responsibility of determining the "qualifications" of certain meats and meat food products for entry into interstate commerce. Such "qualifications" are to be judged by standards established by the Secretary of Agriculture in promulgating regulations in aid of enforcement of the FMIA. These federal standards exist irrespective of any state meat inspection standards in use in Michigan or in any other state. The

federal standards simply attempt to assure consumers that certain wholesomeness, marking, packing, labeling, and branding minimum requirements have been met before meat from one state is allowed to be shipped to another state, or before meat from one state is allowed to be packed or stored in the same area of a facility in which meat from other states is packed or stored. The Court does not believe that the FMIA or the regulations pit Michigan state-inspected meat against federally-inspected meat for the purposes of branding one "type" more "wholesome" than the other "type." Rather, the Court reads the FMIA and the regulations as requiring proof of compliance with federal minimum standards of wholesomeness, marking, packing, labeling, and branding as a condition precedent to allowing meats or meat food products to enter the stream of interstate or foreign commerce. Additionally, the Court views the FMIA and the regulations as the way in which Congress and the Secretary of Agriculture have seen fit to attempt to administer the objects of this legislation as logically and as economically as they can through various enforcement mechanisms. The Court does not sit to second-guess Congress or the Secretary in these respects. Instead, the Court must confine its review to plaintiffs' constitutional challenges to the FMIA and the regulations as outlined above.

■■■ Plaintiffs' substantive due process challenge to the FMIA and the regulations must fail. The basic test of substantive due process is whether the Government can justify the infringement of its legislative activity upon the rights and liberties of the aggrieved parties. It is clear that so long as the legislative or regulatory activity does not encroach upon constitutional guarantees, Congress has a broad scope of discretion in regulating interstate commerce. *See Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91, 99 (1978); *North Dakota State Board of Pharmacy v. Snyder's Drug Stores,* 414 U.S. 156, 162–64, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379, 385–86 (1973); *Beller v. Middendorf,* 632 F.2d 788, 807–08 (9th

Cir. 1980); *Oklahoma v. Federal Energy Regulatory Commission,* 494 F.Supp. 636, 650, 661–62 (W.D.Okl.1980). Congress may enact prophylactic measures to achieve an otherwise legitimate goal without violating the Due Process Clause. *McGarvey v. District of Columbia,* 468 F.Supp. 687, 690 (D.D.C.1979).

In *Exxon Corp. v. Governor of Maryland, supra,* the Supreme Court offered the following succinct guidance in resolving substantive due process questions:

> ... The evidence presented by the [appellants] may cast some doubt on the wisdom of the statute, but it is, by now, absolutely clear that the Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation' ..." [Citation omitted.] ... Appellants argue that [the legislature's] response [to the problem identified by the legislature as the impetus for the legislation] is irrational and that it will frustrate rather than further the [legislature's] desired goal of enhancing competition. But ... this argument rests simply on an evaluation of the economic wisdom of the statute ... [citation omitted], and cannot override the [legislature's] authority "to legislate against what are found to be injurious practices in their internal commercial and business affairs ...." [Citation omitted.] Regardless of the ultimate economic efficacy of the statute, we have no hesitancy in concluding that it bears a reasonable relation to the [legislature's] legitimate purpose in controlling the gasoline retail market, and we therefore reject appellants' due process claim.

*Exxon Corp. v. Governor of Maryland, supra,* 437 U.S. at 124–25, 98 S.Ct. at 2213, 57 L.Ed.2d at 99. When Congress enacted the FMIA in the exercise of its power to regulate interstate commerce, it did no less than what the Maryland legislature did in regulating intrastate commerce in the *Exxon* case. The standards in both cases should be the same. Accordingly, it need only be shown that the challenged legislative activity in this case is not arbitrary or unreason-

able. *See North Dakota State Board of Pharmacy v. Snyder's Stores, supra,* 414 U.S. at 164, 94 S.Ct. at 412, 38 L.Ed.2d at 386; *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 3–4 (7th Cir. 1974) (Stevens, J.); *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1200 (8th Cir. 1974). If there is a legitimate purpose which the legislation aims to effect, and if the legislation is a reasonably related means to achieve the intended end, the statute will be upheld. Courts will not be concerned with whether the particular legislation in question is the best or most prudent choice from among available alternatives. The Court does not require Congress to adopt a perfect panacea to cure all ills or to achieve the intended goals of the legislation. Rather, the Court requires only that the statute enacted by Congress not be arbitrary or without a reasonable relationship to the purposes articulated.

■ Statutes enacted by Congress to regulate the economy through exercise of its powers under the Commerce Clause are beyond reproach by this Court unless there is clear and convincing proof that there is no rational basis for the legislation. In other words, it must be demonstrated to this Court by plaintiffs that Congress has engaged in "arbitrary fiat" in enacting the FMIA, or that the Secretary of Agriculture has enforced the FMIA through regulations which bear no reasonable relationship to the purposes behind the FMIA. *Carolene Products Co. v. United States,* 323 U.S. 18, 31–32, 65 S.Ct. 18, 89 L.Ed. 15, 24 (1944). Moreover:

> So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state [or the federal government] is free to adopt whatever economic policy may reasonably be deemed to promote public welfare [or to regulate interstate commerce], and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio. . . .* And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. . . . Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power.

*Nebbia v. New York,* 291 U.S. 502, 537–38, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957, 89 A.L.R. 1469 (1934).

Inasmuch as the Court considers the interests in uniformity of labelling, uniformity of marking, uniformity of branding, and in proper packing to be legitimate purposes to be carried out by the FMIA, and since the FMIA and the regulations promulgated by the Secretary of Agriculture are reasonably related to those purposes, the Court will not strike down the challenged statutory or regulatory provisions. The Court is not a "superlegislature" and cannot second-guess Congress or the Secretary. Whether or not the procedure set forth by the FMIA and the regulations is wise or prudent is a question to be addressed by Congress. All of the policy objectives to be effectuated by the FMIA and the regulations—and the means by which those goals are to be attained—are matters involving political considerations over which this Court may not exercise any control. Responsibility for resolving those disputes or problems properly rests with the Congress. This Court finds that there is a rational basis for the FMIA and the regulations, and therefore the Court holds that the FMIA and the regula-

tions do not violate the substantive due process guarantees of the Fifth Amendment.

Plaintiffs most impelling argument is that the Secretary's failure to "designate" Michigan is tantamount to a finding that Michigan's state meat inspection program meets minimum federal meat inspection requirements. Presumably, plaintiffs would argue that such a "finding" would mean that *all* of the purposes of the FMIA were being advanced in Michigan through its state meat inspection program, including the interests in promoting proper packing of meats and in attaining uniformity in labelling, marking, and branding. Such an argument is even more impelling since the FMIA obviously seeks to achieve a maximum degree of state cooperation in adopting suitable meat inspection programs. *See, e. g.,* 21 U.S.C. § 661. Plaintiffs argue that presently a number of states—including Michigan—are considering abandoning their state meat inspection programs either for budgetary reasons or because of the practical problems identified earlier in this opinion concerning the effects of enforcement of the FMIA. Plaintiffs argue that abandonment by the states of their own meat inspection programs frustrates the obvious intent of the FMIA. In view of the foregoing, plaintiffs argue that the Secretary's "finding" that Michigan complies with federal minima as to *all* objectives of the FMIA should be viewed by this Court as vitiating any rational basis which Congress may have had in passing the FMIA in the first place. Accordingly, plaintiffs petition this Court for relief on the grounds that there is no longer a rational basis for treating Michigan state-inspected meat any differently than federally-inspected meat.

At first blush, plaintiffs arguments appear persuasive. If the Secretary's inaction in failing to "designate" Michigan is to be translated into a "finding" that Michigan's state meat inspection program meets *all* federal standards adopted to advance *all* of the purposes of the FMIA, then the Court would be compelled to rule in favor of plaintiffs. However, the Court does not believe that the Secretary's failure to "des-ignate" Michigan can be translated into a "finding" as plaintiffs contend.

It is clear that if a state is "designated" by the Secretary, various pre-ordained plans are put into effect. *See* 21 U.S.C. §§ 661(c)(1), (3), and (4). However, nothing in the FMIA specifies the effect of the Secretary's failure to "designate" a state. The Court believes that a fair reading of the FMIA results in discovering that a failure to be "designated" simply means that the Secretary shall not take steps toward taking over the meat inspection program of that state. It appears that the "designation" procedure accompanying the FMIA is designed to place violating states on notice of eminent action to be taken by the Secretary of Agriculture unless the state meat inspection program "designated" by the Secretary is upgraded to federal minimum standards within a specified period of time. It is significant that no hearings are scheduled or held by the Secretary of Agriculture to determine whether the Secretary should refrain from "designating" a state. The FMIA allows the Secretary to "designate" a violating state without holding a hearing as to the propriety of taking such action. Of course, a federal district court would have limited jurisdiction to determine whether or not the Secretary exceeded his authority in "designating" a particular state, *Fargo Packing Corp. v. Hardin*, 312 F.Supp. 942 (D.N.D.1942), but a failure to "designate"—under any fair reading of the FMIA—cannot be treated as a "finding" of compliance with the federal meat inspection standards. Thus, plaintiffs' argument in this regard as outlined above must carry no weight.

As already mentioned, the Court finds that a rational basis for the FMIA and the regulations exists. Accordingly, any further analysis of the equal protection claim would be unnecessary. However, the Court notes that plaintiffs have failed to demonstrate that either the language of the FMIA or the regulations, or the enforcement of those provisions, has resulted in disparate treatment of plaintiffs *vis-a-vis* others similarly situated. All other state meat inspection programs and state-inspect-

ed meats are governed by the same statutory and regulatory guidelines enforced against plaintiffs in Michigan. Furthermore, plaintiffs have failed to demonstrate that any meat packers are treated any differently than plaintiffs when it comes to enforcement of the FMIA and the regulations. While the Court sympathizes with plaintiffs in their contention that it is much more costly to comply with federal meat inspection guidelines than with Michigan's state meat inspection program, such an argument is best addressed to Congress. Whether this Court believes the added costs of compliance are justified is beyond this Court's power to resolve. Congress, and not this Court, affords plaintiffs with the appropriate forum for the purpose of airing these grievances.

For all of the foregoing reasons, the Court denies plaintiffs' motion for summary judgment and grants the Government's motion for summary judgment. Plaintiffs' motion for injunctive relief is denied.

IT IS SO ORDERED.